## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WESTERN VALUES PROJECT
704 East 13th Street, Suite 568
Whitefish, MT 59937,

*Plaintiff*,

vs.

UNITED STATES DEPARTMENT OF
THE INTERIOR
1849 C Street NW
Washington, DC 20240,

*Defendant*.

Case No.

## COMPLAINT

Western Values Project brings this action against Defendant United States Department of the Interior ("DOI" or the "Department") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

## Preliminary Statement

1.     The United States Department of the Interior is responsible for sustaining America's lands, water, wildlife, and energy resources, and for fulfilling the United States' responsibilities to 567 tribal nations.  DOI manages one-fifth of the land in the United States, safeguards the water supply for more than 30 million people, and protects America's natural landscapes.

2.     On August 1, 2017, David Bernhardt was sworn in as Deputy Secretary of the Interior.  As Deputy Secretary, Bernhardt is the second-highest-ranking official at the

agency, where he wields significant influence over the Department's 70,000 employees and an annual budget of approximately $12 billion.

3.      It is an open question whether Deputy Secretary Bernhardt has exercised these duties impartially and consistent with his ethical obligations to the American public.  Immediately before assuming the role of Deputy Secretary, Bernhardt served as chair of the natural resources group at the lobbying firm of Brownstein Hyatt Farber Schreck, LLP ("Brownstein Hyatt").  There, Deputy Secretary Bernhardt worked on behalf of dozens of mining and fossil fuel companies with business before the Department.  Many of these clients have sought to develop natural resources, especially energy resources, by stripping protections for the nation's public lands and waters, often over the objections of local communities, taxpayer advocates, and environmental and recreation groups.

4.      Although Deputy Secretary Bernhardt pledged to recuse himself from involvement in matters involving some of his former clients, recent DOI activity suggests that the Deputy Secretary may not have honored his commitment: it is noteworthy that many of the Deputy Secretary's former clients began receiving sudden and dramatic windfalls only months after his swearing in.

5.      To better understand and inform the public of the circumstances surrounding the Deputy Secretary's role within DOI and his compliance with ethical obligations, Plaintiff – a not-for-profit organization dedicated to educating Americans about DOI's management of public lands and resources – submitted ten FOIA requests to the agency.  Each of these requests sought documents pertaining to the Deputy Secretary.

6.     DOI has uniformly failed to respond to Plaintiff's FOIA requests within the timelines required by law.

7.     The agency's decision to shield its Deputy Secretary from the oversight provided by FOIA deprives Plaintiff and the public of vital information concerning DOI and its management of public lands.  Accordingly, Plaintiff respectfully asks this Court to order DOI to respond to Plaintiff's FOIA requests.

## Parties

8.     Plaintiff Western Values Project is a tax-exempt organization within the meaning of Section 501(c)(3) of the Internal Revenue Code whose mission is to give a voice to Western values in the national conversation regarding resource development and public lands conservation.

9.     The Western Values Project researches, among other subjects, ties between DOI and industry actors who seek to profit from the Department's work, releasing the results of its investigations to the public.

10.     Defendant DOI is a federal agency within the meaning of FOIA, *see* 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  DOI has possession, custody, and control of records that Plaintiff seeks.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law, specifically the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B).

12.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Defendant is headquartered in Washington, D.C. and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

### Legal Framework

13.     Congress passed FOIA to promote and ensure government transparency and the expedient disclosure of government records.  The Act codifies the public's right to access those records, which may only be withheld if the responding agency properly invokes one of nine narrow FOIA exemptions. 5 U.S.C. § 552(b)(1)-(9); *id.* § 552(a)(4)(B).

14.     Federal agencies must comply with strict FOIA deadlines upon receipt of a records request.  The agency must "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i).

15.     The 20-day period in which an agency must respond may be extended by written notice setting forth "unusual circumstances," as defined by statute. *Id.* § 552(a)(6)(B)(iii).  The extension may be no longer than ten working days. *Id.* § 552(a)(6)(B)(i); *see* 43 C.F.R. §§ 2.16(a), 2.19(b).

16.     Upon receipt of a FOIA request, an agency "shall make reasonable efforts to search for the records" responsive to the request.  5 U.S.C. § 552(a)(3)(C).  The agency "shall make the [responsive] records promptly available," *id.* § 552(a)(3)(A), unless the agency can show that it may lawfully withhold all or portions of the requested records pursuant to the narrowly-defined FOIA exemptions listed in 5 U.S.C. § 552(b).

4

17.    DOI FOIA regulations allow "processing tracks to distinguish simple requests from more complex ones on the basis of the estimated number of workdays needed to process the request." 43 C.F.R. § 2.15(a). "Simple" requests take one to five workdays to process; "normal" requests take six to twenty workdays; "complex" requests take between twenty-one and sixty workdays; and "exceptional/voluminous" requests, (*i.e.*, "very complex processing challenges, which may include a large number of potentially responsive records") take over sixty workdays to process. *Id.* § 2.15(c)(1)-(4).

18.    DOI's multi-tracking process does not in any way alter FOIA's statutory deadline for an agency to determine whether to comply with the FOIA request. *Id.* § 2.15(f).

## Factual Allegations

### *Deputy Secretary Bernhardt's Potential Conflicts of Interest*

19.    DOI's mandate is vast: the agency manages National Parks, regulates energy development in public lands and waters (including subsurface energy resources), upholds the nation's commitments to federally recognized Indian tribes, protects threatened birds and terrestrial species, and ensures flood control and irrigation for millions of Americans. The Department is led by the Secretary of the Interior and the Deputy Secretary.

20.    Deputy Secretary Bernhardt served in various political appointments at DOI between 2001 and 2009. In those positions, he often participated in efforts to deregulate public lands, often for purposes of resource extraction.

21.    As the Department's Solicitor between 2006 and 2009, Bernhardt abandoned agency efforts to restore federally-protected species to their historical habitats

and advised then-Deputy Assistant Secretary for Fish, Wildlife, and Parks Julie MacDonald as she pursued a similar deregulatory agenda.[1]  MacDonald's tenure ultimately ended in scandal and her resignation: a DOI Inspector General report catalogued her persistent flaunting of the Endangered Species Act, and faulted her for improperly releasing non-public information to the fossil fuels industry, ignoring congressional and agency requirements for species' conservation, and generally violating the public trust.  According to the report, then-Solicitor "Bernhardt was focusing more on [Endangered Species Act] issues than his predecessors."[2]

22.     During his initial tenure at DOI, Bernhardt also worked with then-Deputy Secretary J. Steven Griles, a former coal lobbyist who pledged to recuse himself from coal-related work while at the agency, but who almost immediately violated that pledge by meeting with representatives from the fossil fuels industry.[3]  Later, notorious lobbyist Jack Abramoff reported that Griles had promised to use his authority to block a casino

---

[1] *See* Noelle Straub, *Endangered Species: Scientists Call For Ending Bush-Era Listing Policy*, Greenwire (Dec. 12, 2009), https://www.eenews.net/stories/85528.

[2] Dep't of the Interior, Office of the Inspector General, *Investigative Report: On Allegations Against Julie MacDonald, Deputy Assistant Secretary, Fish, Wildlife and Parks* at 15, https://www.doioig.gov/sites/doioig.gov/files/Macdonald.pdf.

[3] Juliet Eilperin, *Interior Department's No. 2 Resigns After Controversial Tenure,* Wash. Post (Dec. 8, 2004), http://www.washingtonpost.com/wp-dyn/articles/A45180-2004Dec7.html.

adverse to Abramoff's interests.[4]  Griles ultimately resigned from DOI before pleading

guilty to obstruction of justice in connection with the Abramoff scandal.[5]

23.     Bernhardt's tenure as Solicitor was marked by several other scandals,

including DOI's alleged retaliation against whistleblowers,[6] and the Mineral and

Management Service's failure to collect adequate royalties from the oil and gas sector, a

mistake that could have cost the American taxpayer $10.5 billion.[7]

24.     After leaving government service, Bernhardt took a position at Brownstein

Hyatt.  He remained with the firm, representing several clients with business before DOI,

until his August 2017 confirmation as Deputy Secretary.

25.     Upon his confirmation, Deputy Secretary Bernhardt was prohibited by 18

U.S.C. § 208(a) from participating "personally and substantially . . . in a . . . particular

matter in which, to his knowledge, he, his spouse, minor child, general partner,

organization in which he is serving as officer, director, trustee, general partner or

employee, or any person or organization with whom he is negotiating or has any

---

[4] Susan Schmidt, *Abramoff Cited Aid of Interior Official*, Wash. Post. (Aug. 28, 2005), http://www.washingtonpost.com/wp-dyn/content/article/2005/08/27/AR2005082701067.html.

[5] James Grimaldi, *Judge Orders Prison Time for Ex-Interior Deputy*, Wash. Post (June 27, 2007), http://www.washingtonpost.com/wp-dyn/content/article/2007/06/26/AR2007062601472.html.

[6] Chris Casteel, *Whistle-blower allowed to resign*, The Oklahoma (Feb. 27, 2008), https://newsok.com/article/3209110/whistle-blower-allowed-to-resign?

[7] Stephen Power, *Federal Oil Officials Accused In Sex and Drugs Scandal*, The Wall Street Journal (Sept. 11, 2008) https://www.wsj.com/articles/SB122107135333120223; Ian Urbina, *Inspector General's Inquiry Faults Regulators*, The New York Times (May 24, 2010), https://www.nytimes.com/2010/05/25/us/25mms.html.

arrangement concerning prospective employment, has a financial interest." The Deputy

Secretary may seek and obtain exceptions from this pledge under 18 U.S.C. § 208(b).

26.     Furthermore, Deputy Secretary Bernhardt made various ethics pledges.

First, he promised to refrain from "particpat[ing] personally and substantially in any

particular matter involving specific parties in which [he] know[s] a former employer or

client of [his] is a party or represents a party for a period of one year" after he last

represented that client.[8]  The Deputy Secretary may seek and obtain exceptions from this

pledge.

27.     Second, the Deputy Secretary pledged to "not participate personally and

substantially, for two years after appointment, in any particular matter involving specific

parties in which a former employer or client of [his] is or represents a party, if [he] served

that employer or client during the two years prior to [his] appointment."[9]  The Deputy

Secretary may seek and obtain exceptions from this pledge.

28.     In connection with the aforementioned ethics pledges and requirements,

the Deputy Secretary submitted a list of entities from whose matters he is recused.[10]

29.     Among the matters from which Bernhardt is recused (absent a waiver) are

those involving Cadiz, Inc., Eni Petroleum, Garrison Diversion Irrigation District,

Halliburton, and the Independent Petroleum Association of America.[11]

---

[8] Letter from David Bernhardt, Deputy Sec'y, Dep't of the Interior (Aug. 15, 2017),
https://assets.bwbx.io/documents/users/iqjWHBFdfxIU/rL2bONoceiOY/v0.

[9] *Id*.

[10] *Id*.

[11] *Id*.

30. Deputy Secretary Bernhardt's ethics pledges notwithstanding, several of these groups began receiving regulatory bounties shortly after his confirmation. For example, Brownstein Hyatt represent Cadiz Inc., which has long sought DOI permission to develop a sensitive aquifer under California's Mojave Desert. In connection with this work, Cadiz paid Brownstein Hyatt $2.75 million in lobbying fees and granted the firm 200,000 shares of company stock, with a promise to issue more if Brownstein Hyatt successfully brought the aquifer project to fruition.[12] In September and October of 2017 – shortly after Deputy Secretary Bernhardt was confirmed – DOI withdrew legal guidelines, adverse to Cadiz, that had previously protected the aquifers from development.[13]

31. Another entity on Deputy Secretary Bernhardt's list of recusals, Independent Petroleum Association of America ("IPAA"), benefited when Deputy Secretary Bernhardt oversaw proposed revisions of eleven state sage grouse cooperative habitat management agreements, pathbreaking compacts designed to forestall threats to the iconic and imperiled species while balancing the needs of states, localities, and energy interests.[14]

---

[12] Bettina Boxall, *Trump Interior Department Nominee Tells Senate Panel He can Avoid Potential Conflicts of Interest*, L.A. Times (May 18, 2017), http://www.latimes.com/local/lanow/la-me-bernhardt-hearing-20170518-story.html.

[13] Michael Hiltzik, *Loan to Jared Kushner Raises Questions About California Water Project*, L.A. Times (Mar. 7, 2018) http://www.latimes.com/business/hiltzik/la-fi-hiltzik-cadiz-apollo-20180307-story.html.

[14] Scott Streater, *BLM Quietly Studies Changes to Obama-era Safeguards*, Greenwire (Mar. 29, 2018), https://www.eenews.net/stories/1060077775.

32.     As DOI proposed these rollbacks, it also issued Instruction Memoranda that eradicate protections for the sage grouse in favor of loosely-regulated petroleum development.[15]

33.      In response to Bernhardt's deregulatory polices, IPAA and other organizations tied to fossil fuels sent the Deputy Secretary a letter, personally thanking him for his efforts and recommending even further cuts to sage grouse protection.[16]

34.     Deputy Secretary Bernhardt is also recused from working on matters involving Haliburton, the global energy giant with substantial business before DOI. Haliburton has recently enjoyed particular access to the Department and Secretary Zinke, including a meeting between Haliburton chairman David Lesar and the Secretary on August 3, 2017—two days after Bernhardt's confirmation.  The meeting appears to have concerned Lesar's backing of a development in Whitefish, Montana – Secretary Zinke's hometown – that, if consummated, could significantly enrich the Secretary's family.[17] Concerned by the appearance of self-dealing, DOI's Inspector General recently opened an investigation into these meetings.[18]

---

[15] *Id.*

[16] Letter from Dan Naatz, Senior Vice President of Government Relations and Public Affairs, IPAA, to David Bernhard, Deputy Sec'y, Dep't of the Interior (Mar. 27, 2018), https://westernvaluesproject.org/wp-content/uploads/2018/04/Joint-Trades-Comments-DOI-Mitigation-Policies.pdf

[17] Ben Lefebvre and Nick Juliano, *Zinke's Halliburton Mess Deepens*, Politico (June 21, 2018), https://www.politico.com/story/2018/06/21/ryan-zinke-halliburton-developer-conflict-644651.

[18] Juliet Eilperin and Dino Grandoni, *Inspector General Will Review Zinke's Involvement in Land Deal Backed by Halliburton's Chairman*, Wash. Post (June 28, 2018), https://www.washingtonpost.com/news/energy-environment/wp/2018/06/28/inspector-general-will-review-zinkes-involvement-in-land-deal-backed-by-halliburtons-chairman/?utm_term=.88a59dfdf961.

35.     In his tenure as Deputy Secretary, Bernhardt has led policy on development of the Alaskan National Wildlife Refuge, even though he previously represented Alaska in controversial litigation designed to open the Refuge to more drilling:[19] in his official capacity, the Deputy Secretary has described environmental review of drilling in the pristine Refuge as "just nuts," and has promised to speed through legally-required analysis of the drilling under the National Environmental Policy Act.[20]

36.     Other entities on Deputy Secretary Bernhardt's list of recusals that have benefited from DOI decisions during his tenure include Eni Petroleum, which received a permit to drill in arctic waters three months after Bernhardt's confirmation,[21] and Garrison Water District, which has secured several meetings with DOI's front office.[22]

### *Plaintiff's FOIA Requests*

37.     To better understand whether the sudden and marked success of Deputy Secretary Bernhardt's former clients occurred consistent with his full compliance with his

---

[19] Richard Mauer, *State Suing Over ANWR, but Is It Trying to Prove What's Already Been Proven?*, Alaska News (Mar. 25, 2014), https://www.adn.com/alaska-news/article/state-suing-over-anwr-it-trying-prove-whats-already-been-proven/2014/03/26/.

[20] Yereth Rosen, *Trump Administration Seeks Swift Action on Alaska Oil Leases*, Reuters (Mar. 15, 2018), https://www.reuters.com/article/us-usa-oil-alaska-leases/trump-administration-seeks-swift-action-on-alaska-oil-leases-idUSKCN1GR261.

[21] Timothy Gardner, *Trump Administration Permits ENI to Drill for Oil Off Alaska*, Reuters (Nov. 28, 2017), https://www.reuters.com/article/us-alaska-oil-eni/trump-administration-permits-eni-to-drill-for-oil-off-alaska-idUSKBN1DS33B.

[22] Patrick Springer, *ND Officials: Optimism Builds Over $1 Billion Water Pipeline to Serve Red River Valley, Central ND*, WDAY (Nov. 6, 2017), https://www.wday.com/news/4354985-nd-officials-optimism-builds-over-1-billion-water-pipeline-serve-red-river-valley.

ethical obligations and commitments, Plaintiff sent several FOIA requests to DOI.  DOI

has failed to respond to these requests as required by FOIA.

      38.    Specifically, Western Values Project has submitted ten FOIA requests to

which DOI has illegally failed to respond, listed and attached in chronological order:

| Date | Description | Last Communication | Deadline | Exhibit |
|------|-------------|--------------------|----------|---------|
| Nov. 30, 2017 | Records related to James Cason's meeting with representatives of Brownstein Hyatt Farber and Shreck LLP | Jan. 2, 2018 | Jan. 11, 2018 | A |
| Jan. 26, 2018 | Records relating to Conflict of Interest Waiver Requests for and by David Bernhardt | Feb. 22, 2018 | Mar. 9, 2018 | B |
| Jan. 26, 2018 | Records relating to correspondence between lobbyists and coal companies and David Bernhardt | Feb. 22, 2018 | Mar. 9, 2018 | C |
| Jan. 26, 2018 | Records relating to David Bernhardt's correspondence regarding mining and lobbyist groups | Feb. 22, 2018 | Mar. 9, 2018 | D |
| Mar. 13, 2018 | Records relating to correspondence between certain non-governmental individuals and officials including David Bernhardt | Apr. 18, 2018 | Apr. 24, 2018 | E |
| Apr. 13, 2018 | Records regarding David Bernhardt's prepared remarks at the National Mining Association | June 20, 2018 | May 25, 2018 | F |
| Apr. 13, 2018 | Records regarding David Bernhardt's "weekly politicals" meetings | June 20, 2018 | May 25, 2018 | G |
| Apr. 13, 2018 | Records relating to David Bernhardt's Sage Grouse Task Force Meeting | June 21, 2018 | May 25, 2018 | H |
| Apr. 13, 2018 | Records regarding correspondence between Michael Catanzaro and David Bernhardt | July 10, 2018 | May 25, 2018 | I |
| May 4, 2018 | Records related to correspondence of DOI officials and non-governmental individuals | July 18, 2018 | June 18, 2018 | J |

39.     By failing to respond to FOIA requests concerning Deputy Secretary Bernhardt, DOI has violated the law.  Although DOI acknowledged Plaintiff's requests, none of the acknowledgements described the scope of the documents DOI would produce or any relevant withholdings or exemptions.  Otherwise, DOI has been wholly silent in response to Plaintiff's requests.

*Plaintiff's First Bernhardt FOIA Request*

40.     To better understand ties between DOI and Brownstein Hyatt, on November 30, 2017, Plaintiff submitted a FOIA request to DOI seeking "access to and copies of any documents concerning Associate Deputy Secretary James Cason's meetings with any employee or representative of [Brownstein Hyatt] at any point since and including May 1, 2017."  *See* Exhibit A.

41.     In a letter to Plaintiff dated December 29, 2017 (transmitted by email on January 2, 2018) DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-00347.  DOI invoked a 10-workday extension for its determination, citing "unusual circumstances."

42.      Although the request sought documents pertaining to meetings between only two parties and over only seven months, DOI placed the request on the "complex" processing track.  *See* 43 C.F.R. § 2.15.

43.     DOI was required to make a determination on Plaintiff's FOIA request by January 11, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

44.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

//

*Plaintiff's Second Bernhardt FOIA Request*

45.     On January 26, 2018, Plaintiff submitted a FOIA request to DOI for "all Conflicts of Interest Waiver Requests for and by Deputy Secretary of the Interior David Bernhardt and all ethics guidance provided to Bernhardt by the Interior Department of Ethics Office or Office of Government Ethics."  *See* Exhibit B.

46.     In a letter to Plaintiff dated February 21, 2018, (transmitted via email dated February 22, 2018) DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-00613.  DOI invoked a 10-workday extension for its determination, citing unusual circumstances, and placed the request on the "complex" processing track.

47.      DOI was required to make a determination on Plaintiff's FOIA request by March 9, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

48.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Third Bernhardt FOIA Request*

49.     On January 26, 2018, Plaintiff submitted a FOIA request to DOI seeking "copies of all correspondence, including but not limited to emails, letters, and texts, sent by or to Westmoreland Coal Company, representatives of Westmoreland Coal Company," and affiliated coal company lobbyists and DOI officials, including Deputy Secretary Bernhardt.  *See* Exhibit C.

50.     In a letter to Plaintiff dated February 21, 2018 (transmitted via email on February 22, 2018) DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-00615.  DOI invoked a 10-workday extension for its

14

determination, citing unusual circumstances, and placed the request on the "complex"

processing track.

51. DOI was required to make a determination on Plaintiff's FOIA request by

March 9, 2018. *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

52. DOI has not rendered the required determination, further corresponded

with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Fourth Bernhardt FOIA Request*

53. On January 26, 2018, Plaintiff submitted a FOIA request to DOI seeking

"copies of correspondence, including but not limited to emails, letters, and texts"

including the keywords "Westmoreland," "Rosebud," or "Colstrip" and sent to certain

DOI officials, including Deputy Secretary Bernhardt. *See* Exhibit D.

54. In a letter to Plaintiff dated February 21, 2018 (sent via email dated

February 22, 2018) DOI acknowledged receipt of the FOIA request and assigned it

control number OS-2018-00616. DOI took a 10-workday extension on its determination,

citing unusual circumstances, and placed the request under the "complex" processing

track. *See* 43 C.F.R. § 2.15.

55. DOI was required to make a determination on Plaintiff's FOIA request by

March 9, 2018. *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

56. DOI has not rendered the required determination, further corresponded

with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Fifth Bernhardt FOIA Request*

57. On March 13, 2018, Plaintiff submitted a FOIA request to DOI seeking

"correspondence, including but not limited to letters, texts, emails, and faxes" between a

list of individuals affiliated with the energy industry and certain DOI officials, including
Deputy Secretary Bernhardt.  See Exhibit E.

58.     In a letter to Plaintiff dated April 18, 2018, DOI acknowledged receipt of
the FOIA request and assigned it control number OS-2018-00851.  DOI took a 10-
workday extension on its determination, citing unusual circumstances, and placed the
request on the "complex" processing track.  *See* 43 C.F.R. § 2.15.

59.     DOI was required to make a determination on Plaintiff's FOIA request by
April 24, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

60.     DOI has not rendered the required determination, further corresponded
with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Sixth Bernhardt FOIA Request*

61.     On April 13, 2018 Plaintiff submitted a FOIA request to DOI seeking
"Deputy Secretary David Bernhardt's prepared remarks to the National Mining
Association at the Trump International Hotel . . . as well as copies of all video shot,
recorded, or created by or for the Interior Department of Bernhardt's speech."  *See*
Exhibit F.

62.     In a letter to Plaintiff dated June 20, 2018, DOI acknowledged receipt of
the FOIA request and assigned it control number OS-2018-01048.  DOI took a 10-
workday extension on its determination, citing unusual circumstances, and placed the
request on the "complex" processing track.

63.     DOI was required to make a determination on Plaintiff's FOIA request by
May 25, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

64.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Seventh Bernhardt FOIA Request*

65.     On April 13, 2018 Plaintiff submitted a FOIA request to DOI seeking "all agendas, meeting minutes, and any notes taken during or as a result of Deputy Secretary David Bernhardt's 'weekly politics' meetings from July 24, 2017 to present."  *See* Exhibit G.

66.     In a letter to Plaintiff dated June 20, 2018, DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-01045.  DOI took a 10-workday extension on its determination, citing unusual circumstances, and placed the request on the "complex" processing track.

67.     DOI was required to make a determination on Plaintiff's FOIA request by May 25, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

68.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Eighth Bernhardt FOIA Request*

69.     On April 13, 2018 Plaintiff submitted a FOIA request to DOI seeking records "given to or created by Deputy Secretary David Bernhardt, related to the 'Sage Grouse Task Force Meeting,'" which was designed to ease protections for protected species on land valuable to oil and gas interests.  *See* Exhibit H.

70.      In a letter to Plaintiff dated June 21, 2018, DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-01046.  DOI took a 10-

workday extension on its determination, citing unusual circumstances, and placed the request on the "complex" processing track.

71.     DOI was required to make a determination on Plaintiff's FOIA request by July 6, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

72.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Ninth Bernhardt FOIA Request*

73.     On April 13, 2018 Plaintiff submitted a FOIA request to DOI seeking "all correspondence, including but not limited to letters, texts, emails, and faxes" between Deputy Secretary Bernhardt and Michael Catanzaro, a former lobbyist for the oil and gas industry then working for the Trump Administration.  *See* Exhibit I.

74.     In a letter to Plaintiff dated July 10, 2018, DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-01049.  DOI took a 10-workday extension on its determination, citing unusual circumstances, and placed the request on the "complex" processing track.

75.     DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

*Plaintiff's Tenth Bernhardt FOIA Request*

76.     On May 4, 2018 Plaintiff submitted a FOIA request to DOI seeking "all correspondence" between non-governmental individuals and entities and DOI officials, including David Bernhardt."  *See* Exhibit J.

77.     In a letter to Plaintiff dated July 18, 2018, DOI acknowledged receipt of the FOIA request and assigned it control number OS-2018-01122.  DOI took a 10-

workday extension on its determination, citing unusual circumstances, and placed the request on the "complex" processing track.

78.    DOI was required to make a determination on Plaintiff's FOIA request by June 18, 2018.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i); 43 C.F.R. § 2.16(a).

79.    DOI has not rendered the required determination, further corresponded with Plaintiff concerning this FOIA request, or otherwise complied with FOIA.

**Claims for Relief**

**Count One**
**Violation of the Freedom of Information Act**
**(5 U.S.C. §§ 552(a)(6)-(7))**

80.    Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

81.    As of the date of this Complaint, Defendant has failed to produce all records requested by Plaintiff in the above FOIA requests or to demonstrate that such records are lawfully exempt from production.  *See* 5 U.S.C. § 552(a)(6)(C).  Nor has Defendant notified Plaintiff of the scope of any responsive records it intends to produce or withhold and the reasons for any withholdings, or informed Plaintiff that it may appeal any adequately specific, adverse determination.

82.    By failing to respond to Plaintiff's requests within the statutorily prescribed time limits, Defendant has violated its duties under FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, and to produce all responsive, reasonably segregable, non-exempt information.

83.     Plaintiff is being irreparably harmed by Defendant's violations of FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with FOIA.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

1.     order Defendant to conduct searches for any and all responsive records to Plaintiff's FOIA requests and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests;

2.     order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA requests and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.     enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA requests;

4.     order Defendant to grant Plaintiff's request for a fee waiver;

5.     grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

6.     grant such other relief as the Court may deem just and proper.

Dated: July 30, 2018

Respectfully submitted,

/s/ *Javier M. Guzman*

Travis Annatoyn* (*pro hac vice* motion
forthcoming)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
 (202) 448-9090
jguzman@democracyforward.org
tannatoyn@democracyforward.org

*Admitted in New York; practicing under
the supervision of members of the D.C.
Bar while D.C. Bar application is pending.

CO-386-online
10/03

# United States District Court
# For the District of Columbia

)
)
)
)
vs                    Plaintiff    )        Civil Action No._____
)
)
)
)
Defendant    )

## CERTIFICATE RULE LCvR 7.1

I, the undersigned, counsel of record for _____Western Values Project_____ certify that to the best of my knowledge and

belief, the following are parent companies, subsidiaries or affiliates of _____Western Values Project_____ which  have

any outstanding securities in the hands of the public:

None

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

_/s/ Javier M. Guzman_____
Signature

_462679_____        _Javier M. Guzman_____
BAR IDENTIFICATION NO.                      Print Name

_P.O. Box 34553_____
Address

_Washington, DC 20043_____
City            State            Zip Code

_(202) 448-9090_____
Phone Number